AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| IVEL SANCHEZ RIVERA | ) | 2:26-mj-01005-TRR |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 6, 2026_____ in the county of _____Lee_____ in the

_____Middle_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Conspiracy to Interfere with Commerce by Violence |
| 18 U.S.C . § § 1951(a) and 2 | Interference with Commerce by Violence |
| 18 U.S.C. § § 924(c)(1)(A)(ii) | Use and Brandish of a Firearm During and in Relation to a Crime of Violence |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

|   |
|---|
| /s/ Jason J. Hicks |
| *Complainant's signature* |
| Task Force Officer Jason Hicks, FBI |
| *Printed name and title* |

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: __1/7/2026__

| | |
|---|---|
| | *Judge's signature* |

City and state: _____Fort Myers, Florida_____

| | |
|---|---|
| Timothy R. Rice, United States Magistrate Judge |
| *Printed name and title* |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jason J. Hicks, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a Criminal Complaint charging Ivel Sanchez Rivera ("Sanchez Rivera") with violations of 18 U.S.C. § 1951(a) (Conspiracy to Interfere with Commerce by Violence); 18 U.S.C . § § 1951(a) and 2 (Interference with Commerce by Violence); and 18 U.S.C. § § 924(c)(1)(A)(ii)(Use and Brandish of a Firearm During and in Relation to a Crime of Violence).

2.      I respectfully submit that there is probable cause to believe that Sanchez Rivera conspired with others to commit and committed a crime of violence that interfered with interstate commerce, namely robbery, and that during and in relation to that crime of violence, used and brandished a firearm, in violation of the above-referenced statutes.

3.      I am currently a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) in Fort Myers, Florida, and have been so since June 2023. As an FBI TFO, I am an "investigator or law enforcement officer" of the United

States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516(1).

4.    I have been employed by the Cape Coral Police Department (CCPD) since July 2005.  During this time, since June 2023, I have been assigned to work with the FBI as a Task Force Officer.  I have been a detective for CCPD for 18 years. I have been assigned to the Property Crimes Unit (PCU) (4 years), the Vice Intelligence Narcotics Unit (VIN) (4 years), the Violent Crimes Unit (VCU) (7 years), and the Special Investigations Unit (SIU) (3 years).

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

### Introduction

6.    On January 6, 2026, the Cape Coral Police Department ("CCPD") received a call at approximately 10:05 a.m. for a robbery in progress at "Tio Jewelers" located at 110 Northeast 2nd Place, Cape Coral

33909, Unit 306. The caller, who was viewing a real-time, remotely accessible video surveillance camera, reported that there were two male individuals in the store and the manager of the store was on the ground.

7. CCPD law enforcement units responded to Tio Jewelers and located the manager of the store inside whose arms were restrained with "zip ties." The manager advised that he had been robbed at gunpoint by two Spanish-speaking males and pistol-whipped by one of the two assailants. The manager advised that he had opened the store that morning at approximately 9:45 a.m. and proceeded into the store to disable the alarm system. Upon further entry into the store, the manager was confronted by two armed, masked men who ordered the manager to the ground, where the manager was struck and then restrained at his wrists and ankles. Both of the assailants spoke Spanish to the manager who was able to communicate in Spanish. At the time, the manager was wearing a tan satchel that was taken by force. The satchel contained a Sig Sauer, Model P365, 9 mm firearm, serial number 66G363465, that was removed and stolen by the assailants.

8. The manager was then released from the wrist zip ties and forced to open one of the safes in the store that contained jewelry. The assailants removed the jewelry and other contents from the safe and placed them in a black in color backpack as well as white trash bags.

9.     After the safe was opened by the manager, new restraints were placed on the manager's wrists.  The assailants then emptied the contents of the safe into different bags.  The assailants, as overheard by the manager, then placed a call to an unknown individual to bring the car around so they could leave the store.

10.     Shortly after 10 a.m., the assailants left the store through a bathroom in the store and the manager was no longer able to hear or see where the two assailants went.

11.     The manager reported that a large amount of jewelry, valued in excess of $500,000, was taken from the safe.  Over approximately 1,000 jewelry items, including necklaces, chains, earrings, bracelets, rings, watches and pendants were taken.  All of the jewelry had tags with an item number, price and description.  The items taken were either for sale by Tio Jewelers or provided by customers to Tio Jewelers for repair.  Tio Jewelers regularly purchases gold and jewelry from other states in the United States for use in manufacturing jewelry which is ultimately placed for sale in its store.

12.     Additional items taken during the robbery included the manager's own wristwatch (a Breitling watch, bronze in color), valued at approximately $5,500, was taken from him during the robbery.  A second firearm, a Glock 19 9mm, located on top of a safe that was not opened, was

also taken during the robbery. A precious metal analyzer, yellow and black in color, used by Tio Jewelers in the course of its business activity, was also taken.

13.     A review of video surveillance by your affiant revealed that at approximately 12:07 a.m., on January 6, 2026, two individuals wearing dark colored, long- sleeve shirts, blue jeans, masks, backpack, gloves and dark colored shoes walked to Unit 307, a vacant unit adjacent to Tio Jewelers (Unit 306), and pried open the door to Unit 307. Both individuals were able to make entry to Unit 307 and were observed coming and going from the unit over several hours. After 4:48 a.m., both individuals reentered Unit 307 and did not exit until 10:06 a.m.

14.     At 10:06 a.m., a black Infiniti vehicle arrived in the alley in front of Unit 307. A heavy set, Hispanic male exited the driver's side of the vehicle wearing a black ballcap with a white insignia on the front and side of the cap, a black surgical mask, a black and gray hoodie as well as gray sweatpants with a vertical black stripe. The trunk was opened and the male then walked out of view towards the rear of Unit 307. Below is an image of the male who was driving the black Infiniti.



15.

16.     The male then returned with white-colored garbage bags and

began to load them into the car trunk.  Two additional masked men then

entered the vehicle and drove away.  On both rear passenger windows, a beige

sunshade was visible.  Based upon a review of the surveillance video, there

was no license plate affixed to the vehicle.

17.     Further investigation of Unit 307 revealed that a large hole had

been cut into the wall of the bathroom that was adjacent to the bathroom in

Tio Jewelers (Unit 306).  The hole was able to provide access from Unit 307

into Tio Jewelers.  Your affiant believes that the robbers were able to enter and

exit through the opening created from Unit 307 into Tio Jewelers to commit the robbery.

18.     A review of license plate readers (LPR) in the City of Cape Coral resulted in the identification of a 2014 Infiniti, black in color, Florida license plate DX12PM, that was observed at 10:17 a.m. at the intersection of Pondella Road and Orange Grove Boulevard, approximately 4 miles from Tio Jewelers. See image below.



19.

20.     The license plate reader image of the black Infiniti contained a similar beige sunshade and wheels when compared to the image of the black Infiniti used by the assailants to leave the robbery scene.  The registered owner of the vehicle was Ivel Sanchez Rivera, 521 E 43rd Street, Hialeah, Florida.

21.    Further review of LPR in Florida revealed the same black Infiniti in Miami on January 5, the day prior to the robbery, traveling westbound on I-75 at 3:32 p.m.  At 10:16 p.m., the black Infiniti was identified by LPR in Cape Coral in the area of Pondella Road and Pine Island Road.  From 10:16 p.m. until 10:54 p.m., the black Infiniti was identified by additional LPR in Cape Coral along Pine Island Road.

22.    The next LPR hit for the black Infiniti was the following day, at 10:17 a.m., following the robbery of Tio Jewelers.  The black Infiniti continued to register on LPR in Lee County traveling eastbound before returning back to Miami that same day at approximately 1 p.m.

23.    On January 6, 2026, at 1:52 p.m., law enforcement surveillance at 521 E 43rd Street, Hialeah, Florida observed the black Infiniti and Sanchez Rivera, next to the vehicle.  Sanchez Rivera made several trips from the black Infiniti to the residence carrying black and blue bags and was observed to discard something into a trash can at the street curb. Sanchez Rivera was wearing gray sweatpants with a black stripe similar to the clothing worn by the driver of the black Infiniti who was loading items into the trunk in the alley next to Tio Jewelers following the robbery. An image of Sanchez Rivera as observed during the surveillance is below.



24.

25.     Law enforcement surveillance later observed Sanchez Rivera

leave the residence at 521 E 43rd Street with a Hispanic female in a black 2015

Buick SUV, bearing Florida tag, DR55IF. It should be noted that this vehicle

is also registered to Sanchez Rivera according to DAVID (Driver and Vehicle

Information Database). Sanchez Rivera drove to a nearby residence and went

inside with the Hispanic female.  Sanchez Rivera and the Hispanic female

would later leave the residence, and law enforcement conducted a traffic stop

on the black Buick SUV for a traffic violation. Contact was made with the

driver of the vehicle, Sanchez Rivera and the Hispanic female passenger. Both

subjects were asked to exit the vehicle while law enforcement conducted the

traffic stop. Based on the information provided to law enforcement that

Sanchez Rivera was possibly involved in a violent armed robbery hours prior, a safety pat down was conducted on him and the Hispanic female. Law enforcement felt something in the front pocket of Sanchez Rivera's pants and emptied its contents, discovering a red Apple iPhone. Based on the armed robbery investigation, law enforcement was aware that cell phones were used during the commission of the crime; more specifically one of the masked, armed suspects made a phone call to the getaway driver (Sanchez Rivera) in the presence of the victim and advised to bring the car around to leave the jewelry store. Therefore, law enforcement seized Sanchez Rivera's cell phone, regarding the preservation of evidence, in anticipation of obtaining a search warrant to search its contents. Law enforcement then explained the reason for the traffic stop and would later issue Sanchez Rivera a citation for not wearing a seat belt. Law enforcement attempted to interview Sanchez Rivera but he invoked his rights for an attorney and refused to answer any questions.

26. A state residential search warrant was obtained for 521 E 43rd Street and signed by the Honorable Judge Andrea R. Wolfson, a judge from the Circuit Court of the Eleventh Judicial Circuit of Florida, to search for evidence related to the armed robbery of Tio Jewelers in Cape Coral. The search warrant was executed by the FBI Miami SWAT Team and after the

residence was cleared, law enforcement began a search of the residence at 521 E 43rd Street.

27.    Your affiant spoke to the homeowner 521 E 43rd Street, who advised that the home was divided into three units. The main residence was split into two (front unit and middle unit) and there was a third unit (rear unit) located in the backyard of the property. The owner advised that Sanchez Rivera and his girlfriend resided in the middle unit.

28.    A search of the trash bins (green trash bin) in the front yard area revealed two light colored window shades with suction cups. These light-colored window shades appeared to be the same ones that were on the black Infiniti's rear windows during the commission of the armed robbery earlier in the day in Cape Coral. A check of the black Infiniti, which was parked in the driveway of the residence, revealed that the two light colored window shades were removed from the rear windows, but suction cup marks were observed on the windows. It should also be noted that law enforcement observed Sanchez Rivera throw the light-colored window shades away in the green garbage bin earlier that afternoon.

29.    A search of the middle unit (Sanchez Rivera's unit) revealed numerous items that were either worn by Sanchez Rivera during the commission of the crime or were used by him.

- A dark blue New York Yankees baseball cap was located on the dining room table.

- A pair of gray sweatpants with a vertical black stripe were located on the living room couch.

- A black medical/COVID style mask was located in the bedroom in a dresser drawer.

- A grey and black Reebok hoodie was located in the dirty clothes basket in the bedroom.

- 2 camouflage ski masks were located in the bedroom (one inside a dresser drawer and the second located on top of the dresser).

- Two handguns were located on the dining room floor, within a black plastic bag that further contained a white towel, which was wrapped around the two firearms. One of the firearms was the firearm of the manager of Tio Jewelers, a greenish/gray Sig Sauer P365 9mm handgun (Serial #66G363465), loaded with 14 rounds of 9mm ammunition, taken that same day during the robbery.

- A second firearm in the plastic bag was a black Taurus revolver (Serial # LW99643), loaded with 5 rounds of .357 ammunition. From a review of the surveillance video inside of Tio Jewelers, it should be noted that the Taurus revolver appeared to be similar in

appearance to the one used to strike the victim, when he was pistol whipped in the head by one of the armed suspects.

- A pair of black Sketcher men's shoes were located in the rear lanai.

All of the above listed evidence was photographed and collected as evidence and transported to the FBI Fort Myers Office.

30.    I respectfully submit that the facts set forth above establish probable cause to believe that evidence of violations of 18 U.S.C. § 1951(a) (Conspiracy to Interfere with Commerce by Violence); 18 U.S.C . § § 1951(a) and 2 (Interference with Commerce by Violence); and 18 U.S.C. § § 924(c)(1)(A)(ii)(Use and Brandish of a Firearm During and in Relation to a Crime of Violence) have been committed by the defendant, Ivel Sanchez Rivera.

Respectfully submitted,


/s/ Jason J. Hicks
Jason J. Hicks
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by telephone in accordance with Fed. R. Crim. P. 4.1 and 41(d)(3) on this  7th   day of January, 2026.

TIMOTHY R. RICE

UNITED STATES MAGISTRATE JUDGE